IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DANIEL Q.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21cv00600 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Daniel Q. ("Daniel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42. U.S.C. §§ 1381–1383f. Daniel alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC, including using a function-by-function analysis; and (2) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Daniel's Motion for Summary Judgment (Dkt. 15).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Daniel failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Daniel filed for SSI on June 17, 2019, claiming that his disability began on that date[3], due to kidney stones/renal colic, mass on lower back/rib, social anxiety, depression, and abnormal

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Daniel's original alleged onset date was June 28, 2016. At the hearing, Daniel amended his alleged onset date to June 17, 2019. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed).

2

computed tomography of lumbar spine (L3/L4). R. 15, 198. The state agency denied Daniel's application at the initial and reconsideration levels of administrative review. R. 59–79. On March 10, 2021, ALJ David Lewandowski held a hearing to consider Daniel's claim for SSI. R. 34–51. Counsel represented Daniel at the hearing, which included testimony from vocational expert Robert Jackson. On March 29, 2021, the ALJ entered his decision analyzing Daniel's claim under the familiar five-step process[4] and denying his claim for benefits.[5] R. 15–27.

The ALJ found that Daniel suffered from the severe impairments of lumbar degenerative changes, obesity, left elbow bursitis, and sensorineural hearing loss.[6] R. 17. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 1.04 (disorders of the spine), and listing 2.10 (hearing loss not treated with cochlear implantation). The ALJ also considered Daniel's obesity in accordance with SSR 19-2p. R. 19.

The ALJ concluded that Daniel retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 19. Specifically, Daniel can only occasionally perform postural activities and occasionally reach overhead with the left upper extremity. He should avoid concentrated exposure to cold temperatures, wetness, and industrial hazards, and should

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Daniel was 43 years old on the date the application was filed and 45 years old on the date of the ALJ's decision, making him a younger person under the Act. R. 25.

[6] The ALJ found that Daniel's other impairments, including intercostal muscle strain, pulmonary nodules, and left heel pain were non-severe. R. 17–18.

avoid exposure to loud noise, such as heavy traffic. Daniel can have no telephone use. Id. The ALJ determined that Daniel was unable to perform his past relevant work as a loader operator, forklift operator, and composite job: night watchman and boiler operator. R. 25. However, he could perform other jobs that exist in significant numbers in the national economy, such as marker, router, and cleaner. R. 26. Thus, the ALJ determined that Daniel was not disabled. R. 26–27. Daniel appealed the ALJ's decision, and the Appeals Council denied his request for review on October 14, 2021. R. 1–3.

## ANALYSIS

Daniel alleges that the ALJ's RFC findings are not supported by substantial evidence, including that the ALJ failed to determine his RFC using a function-by-function analysis, and that the ALJ failed to properly assess his allegations regarding his symptoms.

### A. Medical History Overview

1. Medical Treatment

Daniel's physical issues, including back and left elbow pain, and sensorineural hearing loss all predate his amended alleged onset date in June 2019. Indeed, as the ALJ points out, Daniel had few doctors' appointments during the relevant period between June 2019 and March 2021, seeing a primary care doctor only twice, in August 2019 and January 2020. At his August 2019 appointment, Daniel complained to his family doctor of chest, back, and radiating elbow pain, which started after he "was helping someone put in a new oven" and was assessed with rib pain and left elbow pain. R. 24, 511–512. At the January 2020 appointment, he complained of left elbow pain, beginning when he hit his elbow on the frame of a car, and heel pain, and was advised to use ice and a compression wrap. R. 517–18. Daniel's other medical treatment occurred prior to his alleged onset date and included steroid injections for complaints of back

4

pain in 2017 and 2018. He also had imaging taken, including an MRI in November 2017 that showed relatively mild disc and facet degenerative changes and disc bulging. R. 361–62. A CT scan in September 2018, showed listhesis, and multilevel degenerative disc disease and facet arthropathy. R. 432. On physical exam in February and March 2019, shortly prior to his alleged onset date, he had limited lumbar range of motion and mild tenderness, but normal muscle strength, sensation, reflexes, and gait. R. 373–76.

2. Medical Opinions

State agency physicians, Bert Spetzler, M.D. and Robert McGuffin, M.D., reviewed the record in October 2019 and April 2020, and both found Daniel capable of a limited range of light work. R. 63-65, 75–77. The ALJ found these opinions persuasive. R. 22.

**B. Physical RFC and Function-by-Function Analysis**

Daniel argues that the ALJ's physical RFC findings are not supported by substantial evidence and that the ALJ failed to perform a proper function-by-function analysis. In support, Daniel points to his own testimony, including his reported difficulty sitting and standing due to pain, as well as difficulty picking up and holding objects with his left hand, and his hearing loss. Daniel also complains that the ALJ did not adopt all the limitations found by the state agency doctors, despite finding their opinions persuasive. Daniel contends that the ALJ minimized the objective findings related to plaintiff's lumbar spine impairments, by writing that the evidence showed only "mild abnormalities." Pl.'s Br. at 16, Dkt. 16. The Commissioner counters that the ALJ accounted fully for Daniel's limitations and substantial evidence supports the RFC.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions

5

reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a full

analysis of Daniel's medical records, the medical opinions, hearing testimony, and the ALJ's conclusions.

Substantial evidence supports the ALJ's physical RFC assessment and the ALJ's opinion specifies how the limitations in the RFC correlate with Daniel's impairments. The ALJ was not required to adopt all the limitations set out by the state agency doctors, even though he found their opinions persuasive. See Martinez v. Saul, No. 7:19-CV-114-D, 2020 WL 4143544, at *6 (E.D.N.C. June 25, 2020), report and recommendation adopted, No. 7:19-CV-114-D, 2020 WL 4092365 (E.D.N.C. July 20, 2020) (noting that the ALJ's failure to adopt all of the limitations in a doctor's opinion "does not leave the court unable to trace the ALJ's reasoning in discounting those opinions or in formulating the RFC"). Here, the ALJ explained that the evidence is consistent with a light RFC because of Daniel's lumbar degenerative disc disease and obesity, which could affect his level of pain and mobility. R. 22. The ALJ noted that, while Daniel had treatment for his spine prior to his alleged onset date of June 2019, he had no lumbar spine appointments from 2019 through 2021, and physical examinations showed a normal gait. The ALJ also explained that Daniel was limited to only occasional overhead reaching to accommodate his left elbow bursitis, and to no loud noises or telephone usage to accommodate his hearing loss. R. 24. The ALJ specifically explained that Daniel needed to "avoid concentrated exposure to cold temperatures, wetness, and industrial hazards. However, the record does not support additional environmental limitations." R. 22. Overall, the ALJ accurately categorized Daniel's physical impairments as being treated "routinely, conservatively, and successfully" and emphasized that none of Daniel's doctors placed any limitations on him or indicated he could not work. R. 24.

Contrary to Daniel's claim that the ALJ minimized the objective findings associated with his lumbar spine impairment, the ALJ discussed the evidence cited in Daniel's brief, including the MRI and CT scan, even though both predate the alleged onset date, and the ALJ's determination that these show "mild abnormalities" is supported by substantial evidence. For example, the impression found by the doctor interpreting the MRI, Robert F. O'Brien, M.D., uses the word "mild" to describe the degenerative changes and disc bulging. R. 362. Likewise, Daniel's doctors treated his back with injections, which is properly considered conservative treatment. See e.g. Dunn v. Colvin, 607 F. App'x 264, 272–75 (4th Cir. 2015) (explaining that treatment consisting of medications and injections may be appropriately considered conservative). Daniel can point to no doctors that placed limitations on him, or stated he was unable to work. Accordingly, I recommend finding that substantial evidence supports the ALJ's physical RFC determination.

**C. Subjective Allegations**

Daniel argues that the ALJ's assessment of his allegations is not supported by substantial evidence. In support, Daniel writes that the ALJ erred by relying on his daily activities to show he is capable of working, including by failing to "qualify the extent to which" he actually performed the activities, i.e. with rest breaks, at his own pace, or with assistance from his children.[7] Pl.'s Br. at 19, Dkt. 16.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-

---

[7] Daniel also reiterates his argument that the ALJ's RFC findings are not supported by substantial evidence, which I have already addressed.

8

3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[8] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a full discussion of Daniel's medical history, including prior to his alleged onset date, and the ALJ adequately supported his finding that Daniel's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged that pain and symptoms are not "always accompanied by objective evidence" but observed that they can "bolster a claimant's subjective complaints" and be a "useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms." R. 24. The ALJ also acknowledged Daniel's complaints related to pain and other symptoms to his doctors and found several severe impairments, lumbar degenerative changes, obesity, left elbow bursitis, and sensorineural hearing loss. However, on balance, the ALJ wrote that, "[Daniel] has not

---

[8] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

consistently complained of and sought treatment for symptoms related to his alleged impairments [which] though not dispositive . . . is a factor in analyzing [his] allegations." R. 24. Though Daniel had a "series of lumbar epidural injections" his last injection was in October 2018, eight months prior to his alleged onset date in June 2019. The ALJ emphasized that Daniel had no medical appointments specifically for his lumbar spine during the relevant period and saw a primary care doctor only twice, in August 2019 and July 2020.[9] R. 24. At these appointments, the doctor assessed rib pain and left elbow pain, and left elbow and left heel pain, respectively. The ALJ further explained that objective medical evidence in the record, including diagnostic imaging, testing, and physical examination showed mild abnormalities, as well as the lack of any restrictions recommended by medical professionals, support the RFC in this case.

Finally, the ALJ appropriately considered Daniel's daily activities, as reported by Daniel in his function report submitted in October 2019, including his ability to care for his two children, do light housework, cook daily, and shop, attend church, and go fishing once or twice a month, as well as play video games, watch television, and perform some self-employed yard work for 15–20 hours a week, as just one of multiple reasons to discount his subjective allegations. At the hearing, Daniel testified that his daughter cooks and cleans, and he takes turns cooking with her. R. 46. Unlike in some of the other cases cited by Daniel, the ALJ does not overstate or mischaracterize the extent of Daniel's daily activities. R. 24. Other reasons the ALJ

---

[9] Daniel indicates that the "record actually documents five medical appointments between 2019 and 2020." Pl.'s Br. at 15, Dkt. 16. However, Daniel takes the ALJ's quote that he "received no treatment from 2019 through 2021" out of context, as the ALJ is stating that Daniel received no treatment/had no medical appointments for his lumbar spine during the relevant period from the alleged onset date in June 2019, through March 2021. R.20, 22, 23. Daniel's last lumbar epidural injection was in October 2018. R. 23. The ALJ accurately reported that Daniel had only two medical appointments with his primary care provider during the relevant period, in August 2019 and January 2020. R. 24. While the record does show that Mark Kasmer, M.D. performed a lumbar myelogram in February 2019 based on a referral for left sacroiliac joint pain, and recommended considering repeat steroid injections (R. 374–76), and Daniel had a CT scan in March 2019, showing no acute pulmonary disease (R. 429), with a follow up visit to discuss the scan a few days later (R. 373), these three medical appointments, consistent with the ALJ's analysis, all occurred prior to the alleged onset date in June 2019.

discounted Daniel's subjective allegations included his failure to seek treatment for his symptoms, the mild abnormalities shown by the objective medical evidence, and absence of medical opinions imposing any limitations, or indicating he cannot work. R. 24. Daniel does not identify any reversible error in the ALJ's analysis or "point to *any* specific piece of evidence not considered by the [ALJ] that might have changed the outcome of his disability claim." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Instead, he urges the Court to reweigh the same record and medical exhibits considered by the ALJ, and to conclude differently. However, the ALJ's job is to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Daniel's subjective complaints with substantial evidence, and that Daniel is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note

any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

    Entered: November 30, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge